Nos. 11-8029, 12-8030

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES, VICTOR
MATOS, ALFRED BLAIR, and MARTIN CHAMPION, individually
and on behalf of all others similarly situated,

*Plaintiffs-Appellants/Cross-Appellees*,

v.

SEARS, ROEBUCK AND CO.,

*Defendant-Appellee/Cross-Appellant*.

---

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case Nos. 1:06-cv-07023, 1:07-cv-00412, and 1:08-cv-01832
The Honorable District Judge Sharon Johnson Coleman

---

## SEARS' CIRCUIT RULE 54 STATEMENT

---

Timothy S. Bishop
Jeffrey W. Sarles
Joshua D. Yount
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600

Michael T. Williams
Galen D. Bellamy
Joel S. Neckers
Allison R. McLaughlin
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone: (303) 244-1800

Bradley B. Falkof
BARNES & THORNBURG LLP
1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 214-8304

*Counsel for Defendant-Appellee/Cross-Appellant Sears, Roebuck and Co.*

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................ 4

ARGUMENT .................................................................................................... 5

I.    This Court's Prior Decision Conflicts With *Comcast* ........................................ 5

II.   The District Court Should Initially Decide Whether A Class Action
      May Be Certified Under *Comcast* ................................................................. 10

III.  The Sixth Circuit's Decision To Stand By Its Prior Opinion Is
      Inapposite And Incorrect ........................................................................... 15

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013) ......................2, 3, 7, 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................1, 2, 11

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184
(2013) ................................................................................................................ 9, 16, 17

*Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013) ................................................... *passim*

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978)................................................ 13, 15

*Cowden v. Parker & Assocs., Inc.*, 2013 WL 2285163
(E.D. Ky. May 22, 2013) ....................................................................................... 8

*Doe v. Univ. of Ill.*, 200 F.3d 499 (7th Cir. 1999)........................................................14

*Forrand v. Fed. Express Corp.*, 2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) .............. 8

*Frederick v. Holder*, 458 F. App'x 572 (7th Cir. 2012)......................................................14

*Kappos v. Hyatt*, 132 S. Ct. 1690 (2012) ............................................................................13

*Lawrence v. Chater*, 516 U.S. 163 (1996) ...........................................................................7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289
(2012)...................................................................................................................... 7

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ................................................................ 2

*Pyke v. Cuomo*, 209 F.R.D. 33 (N.D.N.Y. 2002) ............................................................. 3

*Rengers v. WCLR Radio Station*, 857 F.2d 363 (7th Cir. 1988) ....................................14

*Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 2012 WL 5471122
(N.D. Ill. Nov. 9, 2012)........................................................................................15

*Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008),
*cert. denied*, 558 U.S. 819 (2009).........................................................................10

*United States v. Topco Assocs., Inc.*, 405 U.S. 596 (1972) .................................................2

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................ 2, 3, 9, 11, 12, 19

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d
    409 (6th Cir. 2012) ("*Glazer I*") .............................................................. 8

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, --- F.3d
    ----, 2013 WL 3746205 (6th Cir. July 18, 2013) ("*Glazer II*") .................. 3, 15, 16-20

*Whirlpool Corp. v. Glazer*, 133 S. Ct. 1722 (2013) ....................................... 8, 16

*Wang v. Hearst Corp.*, 2013 WL 1903787 (S.D.N.Y. May 8, 2013) ................................. 8

*Youngblood v. West Virginia*, 547 U.S. 867 (2006) ............................................ 7

## Rules

7th Cir. R. 54 ................................................................................. 1

Fed. R. Civ. P. 23 ........................................................... 1-3, 11, 13, 15, 16, 20

Fed. R. Civ. P. 23(b)(2) ....................................................................... 9

Fed. R. Civ. P. 23(b)(3) ................................................................. 4, 5, 6, 9

Fed. R. Civ. P. 23(b)(3), 1966 advisory committee notes ................................... 10, 11

Fed. R. Civ. P. 23(c)(1), 1966 advisory committee notes .................................... 13

Fed. R. Civ. P. 23(c)(1), 2003 advisory committee notes .................................... 20

Fed. R. Civ. P. 23(c)(1)(C) ............................................................... 13, 15

Fed. R. Civ. P. 23(c)(4) ...................................................................... 12

Fed. R. Civ. P. 23(f) ...................................................................... 4, 14

The Supreme Court granted Defendant Sears, Roebuck and Co.'s petition for certiorari, vacated this Court's judgment approving class certification, and remanded the case for further consideration in light of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) (Dkt. 23-2, Ex. A). Pursuant to Circuit Rule 54 (and in accord with Sears' previously filed and fully briefed motion to remand (*see* Dkt. 23, 25, 26)), Sears urges the Court to remand this case to the district court for reconsideration of its class certification ruling in light of *Comcast* and the significant additions to the evidentiary record since that nearly two-year-old ruling. The district court—which has a duty under Rule 23 to revisit class certification when circumstances change— is best situated to initially apply *Comcast* and the fact-intensive analysis it requires to the extensive and newly supplemented evidence. After telling the Supreme Court that sending this case back to the district court is the appropriate course of action, Plaintiffs offer no viable reason for now arguing to the contrary.

The Supreme Court's GVR cannot be understood in isolation. It continues a trend of decisions rejecting expansive class certifications that extends over the last twenty years. In *Amchem*, the Court made clear that even enormous efficiencies in the handling of tens of thousands of tort claims could not justify class certification of both present-injury and future-injury allegations, where individualized issues of "causation," "injury," and "damages" jeopardized "procedural fairness" and prevented common issues from predominating. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609-10, 615, 623-25 (1997). The Court rejected "gestalt judgment" about the benefits of class certification that avoided rigorous application of the

predominance standard to all factual issues raised by the litigation. *Id.* at 621. In *Ortiz*, the Court reiterated that class certification cannot be founded on "adventurous" applications of Rule 23 that override individualized factual issues. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999).

In *Dukes*, the Supreme Court disapproved a class certified under liberally-construed employment discrimination laws for lack of commonality because there was no "common contention" for which the "determination of its truth or falsity [would] resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The Court insisted on the presence of not just "common questions" but also "common answers." *Id.* And efficiencies obtained through expert estimates and assumed-away defenses would not suffice to certify a class. *Id.* at 2555-56, 2561. In *Comcast*, the Court rejected class treatment of antitrust claims—arising under what the Court previously had called the "Magna Carta of free enterprise" (*United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972))—because individualized issues of injury and damages overwhelmed common questions. 133 S. Ct. at 1432-33, 1434-35.

Most recently, in *American Express*, the Court rejected another antitrust class action in favor of individual arbitration, even though individual arbitration would be prohibitively inefficient and class resolution was the "only economically feasible" way to enforce claimants' rights. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310-2311 & n.4 (2013). The Court explained that Rule 23

2

"**imposes stringent requirements for certification that in practice exclude most claims**." *Id.* at 2310 (emphasis added).

No one should doubt the change in the law that this line of decisions represents. Although courts formerly stated that Rule 23 should be applied with "flexibility" and that they "should resolve all doubts about whether a class should be created in favor of certification" (*see, e.g.*, *Pyke v. Cuomo*, 209 F.R.D. 33, 40 (N.D.N.Y. 2002)), the Supreme Court has adopted a far more stringent policy. And it has not hesitated to grant certiorari a second time, and reverse, if its GVR orders are misconstrued to permit class treatment. *See Am. Express*, 133 S. Ct. at 2308, 2312.

The Supreme Court's demanding class action standards confirm that this Court's previous decision cannot be reinstated, and that Plaintiffs' class certification request must be subjected to "rigorous analysis" in light of *Comcast* and the current record (*Dukes*, 131 S. Ct. at 2551), beginning in the district court. Nothing in the Sixth Circuit's recent decision to reinstate its vacated decision in a related case against Whirlpool counsels a different result. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, --- F.3d ----, 2013 WL 3746205 (6th Cir. July 18, 2013) ("*Glazer II*"). As we explain below, that decision relies on a different set of case-specific circumstances and makes a host of legal and factual errors.

If this Court decides this case instead of remanding, it should hold that the proposed classes cannot be certified under Rule 23 and *Comcast*—as shown in the parties' certiorari-stage submissions, which lay out the legal arguments and

relevant facts that led the Supreme Court to rule that *Comcast* requires reconsideration here. Those submissions are attached to our previously-filed motion seeking a remand. Dkt. 23-2, Exs. B-D.

## BACKGROUND

Plaintiffs sought certification of a six-state breach-of-warranty class under Fed. R. Civ. P. 23(b)(3) to litigate allegations that various Kenmore-brand front-loading washing machines bought from Sears (the "Washers") have a design defect that causes moldy odors and a manufacturing defect in some central control units that interrupts operation with false error codes. In September 2011, the district court denied class certification on the odor allegations but certified a Rule 23(b)(3) class on the control unit allegations. Dkt. 23-2, Ex. B at 9a-22a. This Court granted Rule 23(f) petitions from both parties, then reversed the denial of class certification on the odor claims and affirmed the grant of class certification on the control unit claims. *Id.* at 1a-8a.

Sears thereafter filed a petition for a writ of certiorari in the Supreme Court. Dkt. 23-2, Ex. B. Significantly, in opposing Sears' petition, Plaintiffs maintained that certiorari should be denied so that the parties could "address the full factual record under new legal authority" in the *district court*. Dkt. 23-2, Ex. C at 11.

The Supreme Court granted Sears' petition for a writ of certiorari and ordered as follows: "The petition for a writ of certiorari is granted. The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Seventh Circuit for further consideration in light of *Comcast Corp. v. Behrend*, 569

U.S. __ (2013)." Dkt. 23-2, Ex. E (excerpt from Order List for June 3, 2013). The Supreme Court issued a certified copy of its judgment on July 5, 2013. Dkt. 27.

## ARGUMENT

## I.   This Court's Prior Decision Conflicts With *Comcast*.

A remand to the district court is warranted because this Court's now-vacated decision approving class certification conflicts with *Comcast*. In *Comcast*, the Supreme Court ruled that the Third Circuit incorrectly authorized class certification where individual issues regarding the fact and amount of any damages prevented common issues from predominating in any class-action trial, as required by Rule 23(b)(3). 133 S. Ct. at 1432-33. In doing so, the Supreme Court made a series of holdings that contradict the central premises of this Court's prior decision in this case.

First, *Comcast* requires courts "to take a close look at whether common questions predominate over individual ones" at trial (133 S. Ct. at 1432) and rejects the dissenting view that "economies of time and expense" override rigorous compliance with the predominance requirement (*id.* at 1437 (Ginsburg and Breyer, JJ., dissenting)). This Court's opinion, by contrast, asked only whether it would be more "efficient" to try a single abstract common question—whether the Washers are defective—without regard for the many individualized questions that also would have to be tried to determine liability and damages. Dkt. 23-2, Ex. B at 4a, 7a-8a.

Second, *Comcast* held that "nearly endless" "permutations" in the causes of the alleged injuries, across numerous class members in varied locations, precluded

class certification. 133 S. Ct. at 1434-35. This Court's opinion disregarded far greater permutations—across hundreds of thousands of purchasers of more than 20 different models in six different States, concerning the existence of odors or control-unit malfunctions, the causes of those odors or malfunctions, the amounts of any resulting damages, each customer's care of his or her Washer, and any requests for warranty service. *See* Dkt. 23-2, Ex. B at 17-21; Dkt. 23-2, Ex. D at 7-8.

Third, *Comcast* held that accepting an "arbitrary" method of trying factual disputes on a classwide basis without deciding "whether the methodology was a just and reasonable inference or speculative" would "reduce Rule 23(b)(3)'s predominance requirement to a nullity." 133 S. Ct. at 1433. This Court, however, allowed class certification based on Plaintiffs' speculative theories regarding the supposed insignificance of Washer design changes, purportedly frequent odor and control unit problems, and assumed injuries to purchasers who never experienced those problems. Dkt. 23-2, Ex. B at 4a-7a; *see id.* at 7-12, 24-30; Dkt. 23-2, Ex. D at 7-8.

Finally, *Comcast* concluded that the plaintiffs in that case could not "show Rule 23(b)(3) predominance" because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." 133 S. Ct. at 1433. In this case, the Court acknowledged that the odor and control unit claims raised individual injury and damages issues, but nonetheless approved certification based on the presence of a single supposedly common issue. Dkt. 23-2, Ex. B at 4a, 7a.

Despite the many manifest conflicts between *Comcast* and this Court's now-vacated decision, Plaintiffs argue that *Comcast* is irrelevant to this case and that the Supreme Court's GVR is but a meaningless prelude to reinstatement of this Court's prior decision. Dkt. 25-1 at 4-8. As explained at length in Sears' certiorari submissions and its remand motion papers, Plaintiffs' arguments are meritless. *See* Dkt. 26 at 1-6; Dkt. 23-2, Ex. D at 5-12.

To begin with, if Plaintiffs were right about *Comcast*, the Supreme Court would not have granted certiorari, vacated this Court's decision, and remanded "in light of *Comcast*." Dkt. 23-2, Ex. E. The Supreme Court does not engage in "undisciplined GVR'ing," but rather issues GVR orders only "sparingly." *Lawrence v. Chater*, 516 U.S. 163, 173-74 (1996) (per curiam). It does not permit "the delay and further cost entailed in a remand" unless there is a "reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration." *Id. at* 167-68. Thus, the GVR order in this case shows that the Supreme Court believes that *Comcast* has cast "substantial doubt on the correctness" of this Court's vacated decision. *Id.* at 170; *see also Am. Express*, 133 S. Ct. at 2308, 2312 (reversing after Second Circuit "stood by" earlier GVR'd decision; "Truth to tell, our decision in *AT&T Mobility* all but resolves this case"); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296, 1305 (2012) (unanimously reversing unanimous court of appeals decision reaffirmed after GVR order); *Youngblood v. West Virginia*, 547 U.S. 867, 873 (2006) (Scalia, J.,

dissenting) ("intervening-event GVR orders" are viewed as "polite directives that [the lower courts] reverse themselves").

Indeed, the GVR order here mirrors an identical GVR order vacating the Sixth Circuit's ruling in *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 678 F.3d 409 (6th Cir. 2012) ("*Glazer I*"), a class certification decision involving similar washing machine odor claims, on which this Court's opinion expressly relied (Ex. B at 6a-7a). *See Whirlpool Corp. v. Glazer*, 133 S. Ct. 1722 (2013). Given the Supreme Court's GVR orders in two appeals raising substantially similar class certification questions, the likelihood that the Supreme Court was *not* issuing "polite directives" to reverse is vanishingly small. As discussed *infra* Part III, the Sixth Circuit's response to the Supreme Court's GVR fails to follow these polite directives, a course this Court should not pursue. Other lower courts repeatedly have refused to cabin *Comcast* as Plaintiffs propose. *E.g.*, *Cowden v. Parker & Assocs., Inc.*, 2013 WL 2285163, at *6-*7 (E.D. Ky. May 22, 2013) (applying *Comcast* to deny class certification of tort and contract claims); *Wang v. Hearst Corp.*, 2013 WL 1903787, at *9 (S.D.N.Y. May 8, 2013) (same for Fair Labor Standards Act claims); *Forrand v. Fed. Express Corp.*, 2013 WL 1793951, at *2-*3 (C.D. Cal. Apr. 25, 2013) (same for state law minimum wage claims).

Further, Plaintiffs' efforts to minimize and distinguish *Comcast* misstate Sears' arguments against class certification and mischaracterize Supreme Court precedent. Contrary to what Plaintiffs suggest, this is not a case in which the

amount of damages is the only individual question. Defect, causation, injury, notice, and a raft of other *liability* questions also require individualized proof.[1] *See, e.g.*, Dkt. 23-2, Ex. B at 17-21.

Nor is *Amgen*—which narrowly focused on class certification challenges to a securities-law-specific "fraud-on-the-market" reliance presumption—relevant here. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013). The GVR order says nothing about *Amgen* even though Plaintiffs told the Supreme Court that further proceedings in the lower courts should account for *Amgen* as well as *Comcast. See* Dkt. 23-2, Ex. C at 2. Beyond this, *Amgen* confirmed that suits cannot proceed as class actions where—as here—key issues "exhibit[] some fatal dissimilarity among class members that would make use of the class-action device inefficient or unfair." 133 S. Ct. at 1197.

As for Plaintiffs' attempt to seize on the statement in *Dukes* that "individualized monetary claims belong in Rule 23(b)(3)" (131 S. Ct. at 2558), *Dukes* was not remotely instructing that all individualized monetary claims can be tried as class actions under Rule 23(b)(3). The Supreme Court was simply explaining that Rule 23(b)(3), rather than Rule 23(b)(2), governs suits that seek money damages. *Id.* That is so, the Supreme Court reasoned, precisely because the predominance of common issues and the superiority of class litigation are not self-evident for claims seeking individual damages. *Id.* at 2558-59.

---

[1]  That distinguishes this case from the decisions cited by Plaintiffs that certify classes despite individual damages claims. *See* Dkt. 25-1 at 7; Dkt. 26 at 3-4 n.3.

## II.     The District Court Should Initially Decide Whether A Class Action May Be Certified Under *Comcast.*

Careful application of the Supreme Court's *Comcast* ruling to this case is needed, and should begin in the district court. The class-member-specific permutations involving fact of injury, material changes in product design and user instructions, vast differences in product use by hundreds of thousands of Washer purchasers, and widely differing Washer experiences require fact-intensive analysis to determine, under *Comcast*, which factual and legal questions require individual inquiries and whether any common questions predominate. *Cf. Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008) (ordering decertification of class of clothes dryer purchasers because "evaluation of the class members' claims will require individual hearings"), *cert. denied*, 558 U.S. 819 (2009). A new class certification hearing is essential to decide whether, in light of *Comcast*, the record evidence shows that Plaintiffs have met their burden of proving that common issues predominate over individual ones, such that class adjudication would *both* efficiently resolve the case as a whole *and* do so in a manner that is *fair* to absent class members and Sears. *See* Fed. R. Civ. P. 23(b)(3), 1966 advisory committee note ("Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, . . . without sacrificing procedural fairness"); Dkt. 23-2, Ex. B at 3, 14-21.

The absence of "predominance" when all issues in the litigation are carefully considered cannot be overcome by assuming the defendant will waive its constitutional right to a jury determination of individual issues. As *Dukes* explains,

10

a class-action defendant has an unqualified right to jury resolution of every element of liability and damages and all relevant defenses. 131 S. Ct. at 2561. And even where a defendant consents to settlement (which Sears does not), a class action is improper when rigorous analysis shows a lack of true predominance. *Amchem*, 521 U.S. at 622-25; *see also* Fed. R. Civ. P. 23(b)(3), 1966 advisory committee note ("It is only where this predominance exists that economies can be achieved by means of the class-action device.").

Since late 2011, moreover, the parties in *Glazer*, the corresponding action against Whirlpool, have engaged in significant additional discovery, including voluminous document productions, disclosure of new expert reports and depositions, and additional fact depositions and product inspections. The parties here have agreed that all discovery taken in *Glazer* can be used in the present case, and Plaintiffs' expert witnesses in this case are the same experts disclosed by the *Glazer* plaintiffs. This discovery is relevant to the Rule 23 analysis required by *Comcast*, and materially undermines this Court's class certification ruling.

For instance, the *Glazer* plaintiffs have retained and disclosed a new damages expert who has opined that each class member was injured by Whirlpool's failure to disclose at the point of sale that purchasers should take certain maintenance steps to prevent the development of musty odors. Whirlpool has disclosed a rebuttal expert, who has opined that the plaintiffs' new expert's opinions are fundamentally flawed and unreliable and that her damages theory introduces numerous individualized inquiries that prevent a classwide determination of

damages. Sears anticipates that Plaintiffs will use the same expert and raise this same damages argument here, in which case Sears will use the same rebuttal expert who will offer a similar opinion.

The parties also have expanded and refined their arguments regarding class certification over the years since the district court originally ruled. For instance, Plaintiffs have suggested that they want to pursue their undeveloped and belated request for "issue certification" under Rule 23(c)(4) (Dkt. 25-1 at 8), which the district court rejected on reconsideration because Plaintiffs had "not yet established the propriety of certification of . . . particular issues." Dkt. 23-2, Ex. B at 28a. If Plaintiffs really mean to seek issue certification—even though there is no significant common issue that can be answered "in one stroke," as required by *Dukes*, 131 S. Ct. at 2551, and litigating the supposedly common defect issue would do little to advance the resolution of individual claims—that is yet another reason to return this case to the district court. Likewise, in response to Sears' showing that the proposed class cannot be certified because it is filled with people who never experienced moldy odors, control unit malfunctions, or any other injury and thus lack standing (Dkt. 23-2, Ex. B at 23-30), Plaintiffs have formulated a new "premium price" theory that was not argued to the district court or this Court, is not supported by any evidence in the original class certification record, and faces numerous factual and legal obstacles. *See* Dkt. 25-1 at 13-15; Dkt. 26 at 8-10. In short, the case needs to be remanded for consideration of Plaintiffs' current theories, under the current law, on the current record.

Plaintiffs themselves already have recognized the need for the district court to reexamine its class certification ruling in light of legal and factual developments. In opposing Sears' petition for certiorari, Plaintiffs argued for allowing "the District Court to reconsider its denial of class certification [on the odor claim] under all intervening law" and to "perform further class certification analysis" on the control unit claim. Dkt. 23-2, Ex. C at 2-3. Plaintiffs likewise maintained that "before the District Court, . . . the parties will address the full factual record under new legal authority." *Id.* at 11. Thus, Plaintiffs cannot credibly contend that this Court should rule without first hearing from the district court.

Precisely because changing circumstances can affect a Rule 23 analysis, it has long been the law that class certification orders are "inherently tentative" and "subject to revision in the District Court" based on evidentiary developments in the ordinary course of litigation. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.11 (1978); *see* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); Fed. R. Civ. P. 23(c)(1), 1966 advisory committee note ("A determination once made can be altered or amended . . . if, upon fuller development of the facts, the original determination appears unsound."). That law favors a remand to the district court. *See Kappos v. Hyatt*, 132 S. Ct. 1690, 1697 (2012) ("a district court, unlike a court of appeals, has the ability and the competence to receive new evidence and to act as a factfinder").

A remand to the district court also is consistent with this Court's past treatment of GVR orders. On many occasions, this Court has determined that the

district court is best suited to first address the impact of a GVR order. *See, e.g.*, *Rengers v. WCLR Radio Station*, 857 F.2d 363, 366-67 (7th Cir. 1988) (remanding for retrial on "willfulness" of ADEA violation after GVR order); *Doe v. Univ. of Ill.*, 200 F.3d 499, 500 (7th Cir. 1999) (remanding part of case implicated by GVR order for district court reconsideration); *see also Frederick v. Holder*, 458 F. App'x 572, 573 (7th Cir. 2012) (remanding to BIA after GVR order because discretionary questions "are matters for the BIA to decide in the first instance").

Plaintiffs' suggestion that the Court issue a new decision based on four different sets of briefs filed in two different cases in three different courts both before and after *Comcast* (Dkt. 25-1 at 2)—supplemented with additional arguments in its post-GVR papers (*id.* at 9-17)—confirms the need to return to the district court. There, Plaintiffs and Sears can present all of their arguments and evidence in one place and receive one comprehensive class certification ruling. Such a ruling would then give this Court something appropriate to review, if another Rule 23(f) appeal is warranted. It also would conserve significant judicial and litigant resources that otherwise would have to be devoted to further appellate proceedings based on an evidentiary record and district court ruling that do not reflect current circumstances.

Plaintiffs have objected that a remand would improperly force the district court to decide what portions of this Court's original opinion are correct or controlling. Dkt. 25-1 at 1-2. But this Court's opinion has been vacated in its entirety, and no part of it is controlling. Dkt. 23-2, Ex. E. The district court need

only determine whether the evidence submitted by the parties, in light of *Comcast* and other precedents, allows class certification under Rule 23.

Plaintiffs also have protested that leaving in place the district court's rulings on the odor class would make those rulings "controlling" on remand. Dkt. 25-1 at 9. But an interlocutory district court order is not "controlling" when there are intervening changes in the governing law and operative facts. *See Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 2012 WL 5471122, at *2 (N.D. Ill. Nov. 9, 2012) (summarizing law-of-the-case doctrine). And Rule 23(c)(1)(C) expressly provides that an order granting or denying class certification "may be altered or amended" any time before final judgment. *See Coopers & Lybrand*, 437 U.S. at 469 (class certification orders are "subject to revision in the District Court").[2]

### III.   The Sixth Circuit's Decision To Stand By Its Prior Opinion Is Inapposite And Incorrect.

In response to the GVR "in light of *Comcast*" in the *Glazer* case, a two-judge quorum of the Sixth Circuit declined to remand to the district court and stood by its prior opinion. *Glazer II*, 2013 WL 3746205 (Stranch, J., joined by Martin, J.). That decision provides no guidance in this case because it relies on circumstances that are not present here and also rests on a series of legal and factual errors.

In *Glazer*, the district court certified a *liability-only* class, which in the Sixth Circuit's misguided view allowed it to sidestep *Comcast*. *Glazer II*, 2013 WL 3746205, at *17. Here, the approved classes include both liability and damages

---

[2]   The meritless objections to remand proffered by Plaintiffs are discussed in greater detail in our remand-motion papers. *See* Dkt. 26 at 3-8.

issues, making the conflict with *Comcast* especially stark. Dkt. 23-2, Ex. B at 4a-5a, 7a-8a.

Likewise, in *Glazer*, all of the claims arise under Ohio tort law, which according to the Sixth Circuit allows claims by purchasers without any manifested injury. *Glazer II*, 2013 WL 3746205, at *12-*14. Here the claims arise under the disparate warranty laws of six other states, all or most of which would bar claims by Washer purchasers who have not experienced musty odors, control unit malfunctions, or any other manifested harm. Dkt. 23-2, Ex. B at 25-26.

Finally, this case, unlike *Glazer*, involves control-unit claims regarding a *manufacturing* defect that resulted from sporadic assembly-operator errors and thus could not be present in every (or even most) Washers. Dkt. 23-2, Ex. B at 11-12. Hence, even if *Glazer II* were correctly decided, it would have no bearing on whether this case should be returned to the district court or whether the classes proposed by Plaintiffs satisfy Rule 23.

*Glazer II*, in any event, was not decided correctly. Five errors stand out. First, even though *Glazer I* was GVR'd in light of *Comcast* exclusively (133 S. Ct. 1722), the Sixth Circuit decided that *Amgen* was the Supreme Court decision that should guide its analysis. 2013 WL 3746205, at *15-*16. As we have explained, *Amgen* does not remotely justify class certification in this case. *See supra* p. 9. The materiality requirement considered in *Amgen* had, by definition, one answer for the entire class because materiality in securities fraud cases is judged objectively on a reasonable-person standard. *Amgen*, 133 S. Ct. at 1191. And fraud-on-the-market allegations

16

rely on a monolithic inflation and deflation of market prices injuring investors in the very same magnitude. *Id.* at 1200. Similar class-wide proof is not possible for the defect, breach, causation, injury, and other questions in this case, which turn on what model was purchased, how the Washer was operated and cared for, whether musty odors or control unit malfunctions occurred, and whether the class member requested and received warranty service from Sears. Dkt. 23-2, Ex. B at 17-21. The demonstrated likelihood of disparate answers to those questions among class members gives rise to the "fatal dissimilarity" that *Amgen* acknowledged would preclude class certification. 133 S. Ct. at 1197.

Second, the Sixth Circuit brushed off *Comcast*—the basis for the GVR—as having "limited application" to the liability-only class certified in *Glazer* because *Comcast* addressed class-wide measurement of damages. 2013 WL 3746205, at *17. But *Comcast* is an *a fortiori* authority. In *Comcast*, the Supreme Court reversed class certification because only one of an expert's four theories of antitrust impact from a cable system swap could be measured on a class-wide basis, making it impossible to determine on a class-wide basis what portion of the overcharge calculated by the expert was attributable to the one theory eligible for class adjudication. 133 S. Ct. at 1432-35. If that need for individual damages inquiries to apportion an overcharge was sufficient to prevent class certification in *Comcast*, the much greater need for individual inquiries both here and in *Glazer* plainly bars class certification.

In these cases, there is no standardized claim and each purchaser's situation requires individual evaluation. The Washer purchasers acquired over 20 different Washer models, with differing features affecting the potential for mold. Dkt. 23-2, Ex. B at 8, 17-18. Whether musty odors developed depends on user practices (*e.g.*, whether the purchaser left the Washer's door cracked open between uses or used the Clean Washer cycle periodically) as well as where the machine is located. *Id.* at 7-8. Some customers had problems with the Washers, but most did not. *Id.* at 9-10. Some called for warranty service and their problems were resolved, and some did not. *Id.* Thus, questions of defect, causation, customer use, warranty service, and damages all require individualized evaluation. Allowing class treatment would create a head-on conflict with *Comcast*.

Third, in trying to gloss over the variations among putative class members, the Sixth Circuit accepted the notion that differences in washing machine models do not prevent the defect question from being a common one. 2013 WL 3746205, at *11. To support that conclusion, the court cited an internal Whirlpool email (which predates all of the relevant design changes) and opined that the design changes did not remedy every alleged defect. *Id.* But nothing cited by the Sixth Circuit changes the fact that the answer to the defect question will vary among class members. For instance, if the jury determines that the only defect was the original composition and shape of the aluminum cross-piece, then only class members who bought a Washer before the changes to the cross-piece would have a defective machine. R231-8 ¶ 41(B)-(C). Or, if the jury instead determines that the "Clean Washer" cycle

feature prevented odor through adequate self-cleaning, then class members whose Washers had that feature would not have a defective machine. *Id.* ¶ 41(F). These are just two of the numerous changes in Washer design and customer instructions that occurred throughout the class period that are relevant to the "defect" question. Because, as this Court recognized in its now-vacated opinion, "the answer" to the defect question "may vary with the differences in design" (Dkt. 23-2, Ex. B at 4a), the question is not a common one in the relevant sense. *See Dukes*, 131 S. Ct. at 2551 (not just "questions" but also "*answers*" must be common).

Fourth, the Sixth Circuit assumed that causation is a common question because biofilm supposedly accumulated for some purchasers despite differences in laundry habits, remedial efforts, and home environments. 2013 WL 3746205, at *11. But the court was forced to concede (as Plaintiffs' expert conceded) that all washing machines (top-loaders and front-loaders) can accumulate biofilm and develop mold or mildew (*id.* at *4) and that consumer habits and home environments influence the amount of biofilm (*id.* at *11). The Sixth Circuit also acknowledged the indisputable fact that many purchasers have never had *any* odor problems. *Id.* at *12. Yet the court failed to recognize that because all of those things are true, only individual analysis can determine whether any alleged defect caused biofilm-related odors. Dkt. 23-2, Ex. B at 19.

Fifth, the Sixth Circuit sidestepped the admitted fact that tens of thousands of purchasers never experienced any odor problem by hypothesizing a "purchase premium" theory holding that all class members "experienced injury as a result of

the decreased value of the product purchased." 2013 WL 3746205, at *12-*14. There is no evidence in the *Glazer* appellate record—no documents, no testimony, no purported expert opinions—to support such a speculative damages theory, just as there is none in the record here. Nor did the Sixth Circuit explain how the value of a washing machine that operates perfectly and emits no musty odors has been decreased in any way. And the court never considered how class-wide proof could show that each supposedly defective machine was worth less than it would have been in the absence of the alleged defect. In *Comcast*, the Supreme Court ruled that these kinds of "arbitrary" and "speculative" methods of assessing injury could not support class certification. 133 S. Ct. at 1432-33. The Sixth Circuit's acceptance of an unsupported "premium price" theory disregarded its Rule 23 obligation to wait for discovery, which is "required" both to "identify the nature of the issues that actually will be presented at trial" and to "mak[e] the certification decision on an informed basis." Fed. R. Civ. P. 23(c)(1), 2003 advisory committee notes.

In sum, the Sixth Circuit's *Glazer II* ruling conflicts sharply and irreconcilably with *Comcast* and the Supreme Court's latest pronouncement that Rule 23 "imposes stringent requirements for certification that in practice exclude most claims" (*Am. Express*, 133 S. Ct. at 2310). If "most" class claims are excluded, this one obviously is. The Sixth Circuit's ruling should not be followed here.

## CONCLUSION

Sears respectfully requests that this Court remand this case to the district court to consider the propriety of class certification in light of *Comcast*.

Dated: July 29, 2013

Respectfully submitted,

*s*/Michael T. Williams

Timothy S. Bishop
Jeffrey W. Sarles
Joshua D. Yount
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600

Michael T. Williams
Galen D. Bellamy
Joel S. Neckers
Allison R. McLaughlin
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone: (303) 244-1800

Bradley B. Falkof
BARNES & THORNBURG LLP
1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 214-8304

*Counsel for Defendant-Appellee/Cross-Appellant Sears, Roebuck and Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2013, I electronically filed the foregoing

Sears' Circuit Rule 54 Statement with the Clerk of the Court for the United States

Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that

all participants in the case are registered CM/ECF users and that service will be

accomplished by the CM/ECF system.

*s/* Michael T. Williams